IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 29, 2013

**STATE OF TENNESSEE v. CHARLES D. SPRUNGER**

**Appeal from the Criminal Court for Cumberland County**
**No. 09-0212      David A. Patterson, Judge**

**No. E2011-02579-CCA-R3-CD - Filed April 5, 2013**

Following a jury trial, the defendant, Charles D. Sprunger, was convicted of sexual exploitation of a minor, a Class B felony, and sentenced as a Range I offender to eight years at 100%. On appeal, he argues that the evidence is insufficient to support his conviction and that the trial court erred in sentencing him. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS and ROGER A. PAGE, JJ., joined.

Jeffrey A. Vires, Crossville, Tennessee (on appeal); and James S. Smith, Jr., Rockwood, Tennessee (at trial), for the appellant, Charles D. Sprunger.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Senior Counsel; Randall A. York, District Attorney General; and Gary McKenzie and Amanda M. Hunter, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On July 6, 2009, the defendant was indicted by a Cumberland County Grand Jury for aggravated sexual exploitation of a minor based on the discovery on his computer of more than 100 images of minors engaging in sexual activity after he took the computer to a repair business. The trial court subsequently amended the indictment, reducing the charge to sexual exploitation of a minor.

At the defendant's August 19, 2010 trial, Tammy Arellano testified that in July 2008 she was working for a certified public accountant in Crossville. The accountant's stepson, McKinley Tabor, rented a space in the office for his computer repair business. Ms. Arellano said that her desk was positioned in a manner so that anyone coming to Tabor's office had to pass by her. She said that the usual practice for Tabor's customers was to leave their computers with their name and telephone number on a table located in front of her against the wall beside Tabor's office. On July 8, 2008, the defendant came in with his computer, saying he had talked to Tabor on the phone. The defendant placed the computer on the designated table and attached a note with his name and phone number.

McKinley Tabor, an outsourced IT manager, testified that he provided computer repair and consulting services, primarily for corporations. He also had a small office where individuals brought their computers for repair. On July 4, 2008, Tabor received a phone call from a man who identified himself as "Chuck" and said that he needed Tabor to restore data from the hard drive of his computer. Tabor told the man to bring the computer to his office the following Monday morning. The man telephoned Tabor at 1:00 p.m. that Monday and gave him the password so he could start the computer. While the computer was starting up, Tabor and the man discussed what material he wanted Tabor to restore. Tabor then noticed an icon on the computer indicating that files were waiting to be written to CD. The man asked Tabor to restore a specific program, as well as a Microsoft Money file. While the man was still on the phone, Tabor opened a folder on the computer to see if it contained the missing program. However, the folder actually contained photographs of "what appeared . . . to be pre-pubescent girls engaged in sexually suggestive poses and one of them appeared to be engaged in a sex act with an adult." Tabor told the man he would call him back later and then notified the police. After the police arrived, the folder containing the files waiting to be written to CD was opened, and it contained images of the same nature as the ones Tabor had found earlier. Tabor turned the computer over to Investigator Haynes.

Investigator John Haynes with the Cumberland County Sheriff's Department testified that he went to Tabor's repair shop on July 8, 2008, to investigate "a computer there with . . . possible child pornography images on it." Tabor hooked up the computer and "brought up a page of images that appeared to be young people, eight, ten, twelve, fourteen years old, engaged in various sex acts and some in erotic poses." Investigator Haynes identified in court the computer he received from Tabor's shop and said that he subsequently delivered it to the Tennessee Bureau of Investigation ("TBI") for forensic analysis.

Melanie Garner, a special agent criminal investigator in the Technical Unit of the TBI, testified that she became a certified computer examiner in 2007. She conducted a forensic analysis on the defendant's computer and found several folders containing sexually explicit images of young children. The images were found in a backup folder dated April 7, 2008,

on the main drive of the computer under "owners documents." The images were shown to the jury. Garner also found images of a young girl stored in a temporary folder waiting to be written to a CD. Garner identified a DVD containing a portion of the images retrieved from the original hard drive of the computer. Eight images were found in one folder and 120 images in another folder. She said that the images had a "fingerprint," meaning "basically a number, but it's a very long number and it's a unique fingerprint to that hard drive. And so that is how you verify that it's the same image." The fingerprint of the images linked them to the defendant's computer.

Garner said that, in her expert opinion, the images recovered from the defendant's computer were not the result of a virus. She elaborated that she had never seen a virus organized in a manner that would create different folders on a computer and that the files were found in a backup folder, "which is not typical if the virus is going to attack a computer, not typical that it will attack your backup folder." Further, a number of the images were located in an "allocated," meaning "that space where these are deleted out of the recycle bin, they are put in an allocated," and Garner had never seen a virus attack an allocated space. For a file to take this path and end up in an allocated, an individual had to physically take control of the computer. Garner said that she was "very confident" because of the verification of the fingerprint of the hard drive that all of the images came from the defendant's computer.

On cross-examination, asked if it would have been simpler for a hacker to have put the images on the computer rather than a virus, Garner said that "it would not be simpler." She said there was no evidence that a hacker had placed anything on the hard drive of the defendant's computer "[b]ecause you can see in the operating system of the computer."

Investigator Haynes, recalled by the State, testified that after he took the computer from Tabor's place of business, ownership of the computer was established as belonging to the defendant. A search warrant was obtained and executed at the defendant's residence, which was located in a "completely secluded" area surrounded by "woods, underbrush. It look[ed] like you just force fed a house into the area somehow. It [was] completely grown up." Investigator Haynes, along with Investigator Norris and Deputy Rogers, executed the warrant and told the defendant they had taken possession of his computer from Tabor's shop and were there to look for anything that contained other child pornography. The defendant told the officers that they would not "find any more," which Investigator Haynes thought "a bit odd, . . . indicat[ing] you've got all you're going to get." Deputy Rogers transported the defendant to the sheriff's department, and Investigators Haynes and Norris conducted the search. The defendant's house was in "absolute total disarray, just junk, dirty clothes, bags of trash." In the living room were a "pull-down screen that was probably six or eight feet wide and [went] from just about ceiling to floor" and a sectional couch with a projection type

TV on a table in front of the couch. Between 500 and 1000 DVDs were located on shelves on the walls. On the couch and table were food items and a blanket, and it appeared that the defendant "was living on the couch, just in this home theater." The investigators confiscated a desktop computer in the upstairs loft area and two laptop computers in a downstairs closet.

Investigator Haynes said that after the search was completed, they returned to the sheriff's department and interviewed the defendant after advising him of his rights. The defendant never wrote or a signed a statement but did tell the officers that "he looked at porn on the internet. He said that the computer that [the officers] had was his and that he had had it for two to three years. Said that he lived in the house alone and that no one had access to the computer but him." Investigator Haynes acknowledged that they did not find any pornography in the defendant's house but said they did not search everywhere and only checked about one percent of the massive amount of DVDs they found.

The forty-two-year-old defendant testified that he worked between seventy and eighty hours a week at his landscaping business and acknowledged that he was a recluse. He said that he occasionally had guests, but they had nothing to do with his computer. He said that he bought and watched movies because he did not have cable television. He had Internet service but discontinued it the day after Investigator Haynes came to his house. He denied ever seeing the images on his computer and said he did not know how they had gotten onto his computer. He said that the only thing he had ever burned from his computer was "an annoying pop-up that said do you want to make a back-up of this computer, or a system back-up or something like that. And the thing kept popping up every time I turned the computer on, I got tired of it and I burned it." The defendant denied telling Investigator Haynes that he would not find "any more" child pornography at his house, saying that he told the investigator he would not find "any."

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant argues that the evidence is insufficient to support his conviction. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn.1982). Thus, we must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support

the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

The defendant was convicted of sexual exploitation of a minor, in violation of Tennessee Code Annotated section 39-17-1003, which makes it a Class B felony for "any person to knowingly possess material that includes a minor engaged in (1) [s]exual activity; or (2) [s]imulated sexual activity that is patently offensive . . . [i]f the number of individual images, materials, or combination of images and materials, exceeds one hundred (100)." Tenn. Code Ann. § 39-17-1003(a), (d).

Viewed in the light most favorable to the State, the evidence established that the defendant took his computer to McKinley Tabor's repair business where Tabor discovered numerous photographs of "what appeared . . . to be pre-pubescent girls engaged in sexually suggestive poses and one of them appeared to be engaged in a sex act with an adult." TBI Special Agent Melanie Garner, a certified computer examiner, analyzed the defendant's computer and found over 100 sexually explicit images of young children. She testified that the fingerprint of the images specifically linked them to the defendant's computer and that there was no evidence the computer had been infected with a virus or that someone had hacked into it. The defendant told Investigator Haynes that he had viewed pornography on the Internet and that he lived alone and was the only one who had access to his computer. The defendant testified that he was the only one who used the computer, and Tabor testified

that the defendant had provided him with the password to start the computer. We conclude, therefore, that the evidence is sufficient to sustain the defendant's conviction.

## II. Sentencing

The defendant argues that his sentence is too harsh. The State disagrees, arguing that the trial court appropriately sentenced the defendant within the applicable range. We agree with the State.

Under the 2005 amendments to the sentencing act, a trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;
>
> (3) The principles of sentencing and arguments as to sentencing alternatives;
>
> (4) The nature and characteristics of the criminal conduct involved;
>
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
>
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
>
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2010).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the

purposes and principles of our Sentencing Act." Id. at 707. In State v. Caudle, our supreme court clarified that the "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." 388 S.W.3d 273, 278-79 (Tenn. 2012).

At the sentencing hearing, the defendant's presentence report was admitted which reflected that the defendant's prior criminal record consisted of traffic violations. The trial court determined that the defendant's range of punishment as a Range I offender convicted of a Class B felony was eight to twelve years. Finding no enhancement factors and that the defendant had not presented any mitigating factors, the trial court sentenced him to eight years. Because the offense involved more than 100 images, the court imposed a 100% release eligibility, pursuant to Tennessee Code Annotated section 40-35-501(i)(1)(2)(M). The court further found that the defendant was not entitled to probation. We conclude that the record, as we have set out, supports these findings and affirm the trial court's sentencing determinations.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE